UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.M.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MARTIN O'MALLEY,<br><br>　　　　　Defendant. | Case No. 23-cv-03382-LJC<br><br>**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 10, 12 |

## I.　INTRODUCTION

Plaintiff R.M.[1] challenges the final decision of Defendant Martin O'Malley, Commissioner of Social Security (the Commissioner),[2] finding R.M. not disabled and thus ineligible for Supplemental Security Income benefits. The parties filed cross-motions for summary judgment under Civil Local Rule 16-5. Although that rule no longer applies to cases that are governed by the Federal Rules of Civil Procedure's Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), the parties' cross-motions present the issues in a manner substantively consistent with the Supplemental Rules, and the Court proceeds to resolve them. For the reasons discussed below, R.M.'s Motion is GRANTED (except as to the specific relief requested), the Commissioner's Cross-Motion is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with the Order.[3]

---

[1] Because opinions by the Court are more widely available than other filings, and this Order contains potentially sensitive medical information, this Order refers to the plaintiff only by his initials. This Order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).
[2] Martin O'Malley was sworn in as Commissioner of Social Security on December 20, 2023, and is therefore automatically substituted as the defendant in this case under Rule 25(d) of the Federal Rules of Civil Procedure.
[3] The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Overview

R.M. completed high school through a G.E.D. program while in jail and did not receive formal vocational training. Administrative Record (AR) (ECF No. 8) at 68–69.[4] After he was released, he found a job with a cable television company, starting with home installations and later advancing to "putting up the telephone poles after the hurricanes came through" all over the country. *Id.* at 69–70. He stopped working around 2014 due in part to an injury on the job and difficulty finding other jobs, and he pursued inventions, including "a pen that scratches off lottery tickets." *Id.* at 71. At times, he worked as a caregiver for his mother and for a cousin. *Id.* at 72–73.

R.M. suffers from diabetes, issues with his knees and back (caused in part by a gunshot wound), and peripheral neuropathy, among other limitations. Because this Order turns on what appears to have been a misunderstanding at the administrative hearing, the Court need not address R.M.'s medical history in detail.

R.M. applied for Supplemental Security Income benefits in 2020, when he was fifty-one years old. *See id.* at 57. After R.M.'s application was denied, he sought review by an administrative law judge (the ALJ).

### B. Administrative Hearing

The ALJ began the administrative hearing by questioning R.M. about his vocational and medical history, as well as his symptoms and limitations. AR at 68–83. R.M.'s attorney also questioned him about those topics. *Id.* at 83–92. In response to questions from his attorney, R.M. described difficulty gripping and holding onto objects due to a stinging pins-and-needles feeling in his hands, which has not improved with medication. *Id.* at 88–90.

The ALJ questioned a vocational expert (the VE) about R.M.'s past work. AR at 94–95. The VE testified that R.M. performed highly skilled work as a cable television installer and cable

---

[4] This Order cites page numbers of the Administrative Record as labeled by the Commissioner, and cites all other documents in the record using page numbers as assigned by the Court's ECF filing system.

1 repairer, but that his skills from that work would not transfer to any sedentary jobs and would
2 transfer to only a limited number of light work jobs, with only 3,500 positions nationwide. *Id.*
3    The ALJ asked the VE if jobs would be available for someone of R.M.'s age, education,
4 and work history who was restricted to light work with additional limitations that included (among
5 other restrictions) lifting no more than twenty pounds occasionally and ten pounds frequently, and
6 sitting, standing, and walking for six hours. AR at 94–95. The VE testified that such a person
7 could not perform R.M.'s past work but identified three suitable job categories with a total of
8 97,000 jobs in the national economy. *Id.* at 96.
9    For a second hypothetical, the ALJ set limitations of lifting fifteen pounds occasionally
10 and frequently, and "[s]itting for six hours, standing for two hours, walking for two hours," among
11 other restrictions. AR at 96–97. The VE focused on the fifteen-pound lifting restriction, which
12 required the VE to deviate from the Dictionary of Occupational Titles (where light work allows
13 for lifting of up to twenty pounds) and instead rely on her own education and professional
14 experience. *Id.* at 97–98. After stating that "there certainly are jobs at the light range where there
15 would be more walking and less need for the lifting," the VE identified the following three job
16 categories as suitable: Ticket Taker, with 5,400 positions nationwide; Parking Lot Attendant, with
17 26,000 positions; and Merchandise Marker with a fifty percent reduction, resulting in 70,000
18 positions. *Id.* at 97.
19    When R.M.'s attorney began to question the VE, the VE realized that she had not
20 accounted for the standing and walking restrictions in the ALJ's second hypothetical. AR at 98.
21 The VE stated that "there are Merchandise markers that only stand for four -- stand and walk for
22 four hours out of the day," and that she would reduce the number of jobs to account for that. *Id.* at
23 99. A confused exchange followed:

> [VE:] But based on four hours of standing and walking, there are light jobs that would –
>
> [Attorney:] Two hours.
>
> [VE:] Yes.
>
> [Attorney:] It's two hours --

3

>[VE:] Right.
>
>ATTY: It's two hours standing, two hours walking. Is that right? Did I misunderstand the hypothetical, Your Honor?
>
>ALJ: No, that's correct.
>
>*ATTY: Is it a total of four?*
>
>*ALJ: No.*
>
>ATTY: Oh, okay. Then I misunderstood. Okay. Very good.

*Id.* (emphasis added).

The VE concluded that a sixty percent reduction of merchandise maker jobs was warranted, and the "national number remaining . . . with the *four hours of standing and walking* is going to be approximately 54,000." AR at 99–100 (emphasis added). No one commented on the discrepancy between the VE's continued use of a four-hour restriction after the ALJ clarified that was not what he had intended, and R.M.'s attorney had no further questions for the VE. *Id.* at 100. The ALJ explained the next steps in the process and ended the hearing. *Id.* at 101–02.

**C.     Legal Standard for Administrative Proceedings**

The Social Security Administration uses a five-step process to determine whether claimants are entitled to disability benefits:

>Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "*not disabled*" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).
>
>Step 2. Is the claimant's impairment severe? If not, then the claimant is "*not disabled*" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).
>
>Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "*disabled*" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).
>
>Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "*not disabled*" and is not entitled

4

> to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).
>
> Step 5. Is the claimant able to do any other work? If not, then the claimant is "*disabled*" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "*not disabled*" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "*disabled*" and therefore entitled to disability benefits. *See id.*

*Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999) (footnote omitted); *see also Maxwell v. Saul*, 971 F.3d 1128, 1130 n.2 (2020).[5]  "At steps one through four, the claimant retains the burden of proof; at step five, the burden shifts to the Commissioner." *Maxwell*, 971 F.3d at 1130 n.2.

**D.    The ALJ's Decision**

At Step 1, the ALJ determined that R.M. had not engaged in substantial gainful activity since his application date of September 29, 2020.  AR at 46.

At Step 2, the ALJ identified "diabetes, peripheral neuropathy, and degenerative joint disease of both knees" as severe impairments.  AR at 47.  The ALJ determined that R.M.'s lower back pain and cholesterol level were non-severe.  *Id.*

At Step 3, the ALJ found that none of R.M.'s impairments, alone or in combination, met the criteria for any listing.  AR at 48.  The ALJ considered SSR 14-2p and Listing 9.00B5 (as well as several other listings implicate by Listing 9.00B5) with respect to R.M.'s diabetes; Listing 11.14 with respect to peripheral neuropathy; and Listings 1.15, 1.16, and 1.18 with respect to degenerative joint disease.  *Id.*  R.M. does not challenge the ALJ's determination that he did not

---

[5] The regulatory citations in this passage apply to adjudication of Disability Insurance benefits and refer to an earlier version of 20 C.F.R. § 404.1520 that is substantially similar to the current language of that regulation.  20 C.F.R. § 416.920 sets forth materially identical steps to assess disability for the purpose of Supplemental Security Income benefits, which are at issue in this case.

5

meet the criteria of any listing.

The ALJ assessed the following residual functional capacity (RFC) for the purpose of evaluating Steps 4 and 5:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except lifting and carrying up to 15 pounds occasionally and frequently; sitting for 6 hours, standing for 2 hours, and walking for 2 hours; pushing or pulling as much as he can lift/carry except only operating foot controls with the right and left foot occasionally. The claimant can climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds, and balance, stoop, kneel, crouch and crawl occasionally.

AR at 48.

To support that assessment, the ALJ reviewed R.M.'s medical history and daily activities. AR at 49–56. The ALJ noted that one examination assessed R.M.'s strength at "5 out of 5," *id.* at 51, and another found "muscle power" at "5 out of 5 in both the upper and lower extremities," *id.* at 53. The ALJ did not specifically address R.M.'s grip strength.

At Step 4, the ALJ determined based on testimony from the VE that R.M. could not perform any past relevant work. AR at 57.

At Step 5, the ALJ determined that although R.M. had transferable job skills, the number of jobs suitable for those transferable skills was not significant. AR at 57. The ALJ noted that if R.M. (a person approaching advanced age with no relevant transferrable skills) could perform the full range of light work, he would be found not disabled under Medical-Vocational Rule 202.14. AR at 58; *see* 20 C.F.R. pt. 404, subpt. P, app. 2, § 202.14.

Because the RFC that the ALJ assessed for R.M. included other restrictions beyond light work, the ALJ relied on the VE's testimony to determine whether other work was available, and concluded that R.M. could work as a ticket taker (with 5,000 jobs[6] available nationally), parking lot attendant (26,000 jobs), or merchandise marker (54,000 jobs). AR at 58. The ALJ noted that the VE reduced the number of merchandise marker positions by sixty percent "to account for the

---

[6] The ALJ's decision states that there are 5,000 jobs ticket taker jobs nationwide, AR at 58, while the VE's only reference to ticket taker positions (in response to a different hypothetical) reported "approximately 5,400" jobs, *id.* at 97. That relatively small difference is not material to the Court's decision.

6

1    standing and walking restrictions as described in the above residual functional capacity." *Id.* The

2    ALJ rejected R.M.'s argument that he should be found disabled under Rule 201.14 because he was

3    restricted to sedentary work, stating that the VE's testimony accounted for R.M.'s restrictions and

4    demonstrated that work would be available to him. *Id.*

5        Because other work was available in significant numbers, the ALJ determined at Step 5

6    that R.M. was not disabled. AR at 58–59. The Appeals Council found no basis to alter the ALJ's

7    decision. *Id.* at 1. The ALJ's decision is therefore the final decision of the Commissioner.

8        The Court notes that the ALJ's decision in this case falls somewhat short of the usual

9    standards of writing for administrative decisions, as it contains certain highly casual language, as

10   well as grammatical and other errors. *E.g.*, AR at 49, 50, 52. The decision also uses conclusory

11   language to discount R.M.'s credibility without identifying specific testimony that the ALJ found

12   not credible (an issue not raised in R.M.'s briefs). *Id.* at 49–50, 53; *see Treichler v. Comm'r of

13   Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) ("[W]e require the ALJ to specifically

14   identify the testimony from a claimant she or he finds not to be credible and explain what evidence

15   undermines the testimony." (cleaned up)). Taken as a whole, the decision demonstrates that the

16   ALJ reviewed the administrative record in some detail, and it is clear from the hearing transcript

17   that the ALJ took a genuine interest in R.M.'s life and wellbeing. The Court is also mindful of the

18   workload that ALJs face. That said, the manner in which this decision was written could cause a

19   reader to question the attention that the ALJ paid to preparing it, and that is a concern that the ALJ

20   is encouraged to consider in writing any decision on remand.

21       **E.**    **The Parties' Arguments**

22       R.M. argues that the VE's testimony about work available for the ALJ's second

23   hypothetical (which mirrored the RFC that the ALJ ultimately assessed) was not reliable. ECF

24   No. 10 at 15–18. He notes that the VE specifically identified jobs that require "more walking"

25   before realizing that the hypothetical included a significant restriction on walking, and then only

26   adjusted the number of positions available within one of those jobs. *Id.* at 16–17. More

27   significantly, he contends that the VE improperly answered as if the hypothetical allowed for

28   standing and walking for a total of four hours per day, even though the ALJ clarified that was not

the case. *Id.* at 17–18.

The Commissioner contends that the ALJ properly relied on the VE's testimony, which fell within the VE's expertise. ECF No. 12 at 3–5.[7] As R.M. notes in his Reply, ECF No. 13 at 2, the Commissioner's Cross-Motion does not address the question of whether R.M.'s RFC, the ALJ's hypothetical, or the VE's testimony allowed for a cumulative total of four hours standing and walking, or instead a maximum of two hours *either* standing *or* walking, *see* ECF No. 12 at 3–5.

R.M. also argues that he was effectively restricted to sedentary work, which would result in classifying him as disabled under the Medical-Vocational Guidelines (also known as the "Grids"). ECF No. 10 at 19–20. R.M. asserts that a Social Security Administration manual, the Program Operations Manual System (POMS), calls for applying the lower exertional level if his abilities fall between the levels of light work and sedentary work. *Id.* at 19 (citing POMS DI 25025.015(D)). The Commissioner notes that the POMS calls for using the higher exertional level if a claimant's abilities are only "slightly" reduced from that level, and argues that was the appropriate course here because an ability to lift fifteen pounds exceeds the definition of sedentary work. ECF No. 12 at 5–6 (citing POMS DI 25025.015(D); 20 C.F.R. § 416.967). The Commissioner contends that the Court should defer to the ALJ's judgment on that issue because it was reasonable and supported by substantial evidence. *Id.* at 6. R.M. argues in his Reply that his restrictions in walking, standing, using foot controls, climbing, balancing, stooping, kneeling, crouching, and crawling represented more than a "slight" reduction in capacity from the definition of light work. ECF No. 13 at 2–3.

Finally, R.M. contends that although the ALJ acknowledged his peripheral neuropathy as a severe impairment, the RFC that the ALJ assessed did not sufficiently account for R.M.'s testimony regarding the stinging sensation in his hands and his difficulty grasping objects, which R.M. asserts are supported by medical records showing unusually low grip strength. ECF No. 10

---

[7] The Commissioner asserts that "[e]ach of the jobs provided by the vocational expert had over 20,000 jobs nationwide." ECF No. 12 at 5 (citing AR at 97). That misstates the record. Although the VE testified that there were more than 20,000 jobs for parking lot attendants and merchandise markers, the VE stated that there were only 5,400 ticket taker jobs. AR at 97. That error in the Commissioner's brief is not material to the Court's decision.

8

at 20–21.  The Commissioner argues that the ALJ found R.M. less than fully credible and contends that R.M. did not address the ALJ's credibility finding in his Motion.  ECF No. 12 at 6.  The Commissioner also argues that R.M. failed to identify any medical opinion assessing restrictions as to gripping or handling.  *Id.*  R.M. contends in his Reply that his testimony about constant stinging and difficulty grasping was consistent with his diagnosis and medical records.  ECF No. 13 at 3.  According to R.M., the "ALJ should have included some type of hand limitations in the RFC, or offered proper reasoning for declining to do so."  *Id.*

R.M. asks the Court to reverse the ALJ's decision and "award Disability Insurance Benefits [sic[8]] to him beginning September 29, 2020," or in the alternative, remand for further administrative proceedings.  ECF No. 10 at 21.  The Commissioner asks the Court to affirm the ALJ's decision, or if the Court finds any error, to remand for further proceedings rather than directing an award of benefits.  ECF No. 12 at 6–7.

### III. ANALYSIS

#### A. Legal Standard

In cases challenging the denial of disability benefits, district courts have authority to review and "affirm[], modify[], or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence," which "'means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  A court must consider evidence both supporting and detracting from the Commissioner's decision; if the evidence could reasonably support either outcome, the court may not substitute its judgment for that of the ALJ.  *Id.* at 1010.  Courts "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  *Id.*

---

[8] R.M. applied for Supplemental Security Income (SSI) benefits, not Disability Insurance (SSDI) benefits.  *See* AR at 44, 214,

9

**B.      The ALJ Erred in Relying on Non-Responsive VE Testimony**

R.M. is correct that the VE appears to have misunderstood the ALJ's hypothetical, and the ALJ appears to have overlooked that misunderstanding when the ALJ relied on the VE's testimony.

When the ALJ posed a hypothetical that included restrictions to "standing for two hours, walking for two hours," AR at 97, it was not entirely clear whether the ALJ intended those categories to overlap such that R.M. could spend a total of two hours on his feet, or if the ALJ intended them to be cumulative such that R.M. could spend a total of four hours on his feet so long as that time was equally divided between standing and walking. The VE—after initially overlooking the standing and walking restrictions entirely—apparently understood those restrictions as cumulative, and began to address the number of merchandise marker jobs available that "stand and walk for four hours out of the day." AR at 99. R.M.'s attorney asserted that the hypothetical was "two hours standing, two hours walking," and asked, "Is it a total of four?," to which the ALJ responded, "No." *Id.*[9]

The VE nevertheless went on to report that there were around 54,000 suitable merchandise marker jobs "with the four hours of standing and walking," and neither the ALJ nor the attorney commented on that discrepancy. *Id.* at 99–100.

The ALJ's assessment of R.M.'s RFC is similarly ambiguous as to whether R.M. could spend a total of two or four hours on his feet, finding R.M. capable of "sitting for 6 hours, standing for 2 hours, and walking for 2 hours." AR at 48. The ALJ apparently intended the RFC to reflect the hypothetical presented to the VE, which—as discussed above—the ALJ clarified as *not*

---

[9] The attorney's response to that answer—"Oh, okay. Then I misunderstood."—seems out of place, given that the attorney seems to have been seeking to clarify that the hypothetical did *not* allow for four hours total on R.M.'s feet, which was what the ALJ confirmed. *See* AR at 99. It is also possible that the attorney had understood the hypothetical as allowing for four hours total, but wanted to clarify that no more than two of those hours could be walking, which the VE had not specifically addressed. Either way, it is odd that the attorney did not follow up on this point when the VE still proceeded to address the number of jobs "with the four hours of standing and walking" even after the ALJ's clarification. *Id.* at 99–100. To the extent there might be any question of whether the ALJ meant what he appears to have said from the transcript, or if some other meaning was apparent in context to the participants in the hearing, the ALJ can clarify that on remand.

10

reflecting a total of four hours. *See id.* at 99.

That understanding is reinforced by medical records on which the ALJ relied. A physician who performed a consultative examination concluded that R.M.'s "ability to stand and walk for more than two hours in an 8-hour day is limited due to back pain and numbness." AR at 357. The ALJ "f[ound] this opinion persuasive," and he appears to have understood it as meaning that R.M. could spend no more than two hours combined either standing or walking, rather than as indicating that he could spend a total of four hours on his feet if he divided that time between standing and walking. AR at 54 ("Dr. Sharma also opined that the claimant could sit for 6 hours total in a 8-hour workday and stand and walk for 2 hours *total* in an 8-hour workday." (emphasis added)). Accordingly, when the ALJ assessed an RFC that included restrictions to "standing for 2 hours, and walking for 2 hours," *id.* at 48, he seems to have meant that R.M. could not spend more than two hours on his feet during a regular workday, regardless of whether that time was spent standing or walking. The ALJ nevertheless cited the VE's testimony as demonstrating that 5,000 ticket taker jobs, 26,000 parking lot attendant jobs, and 54,000 merchandise marker jobs in the national economy could be performed by "an individual with the claimant's age, education, work experience, and residual functional capacity," *id.* at 58, even though the VE had not addressed what jobs would be available for someone who could only spend two hours standing or walking.

An ALJ may properly rely on testimony from a VE regarding suitable jobs in response to a "hypothetical that . . . contained all of the limitations that the ALJ found credible and supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Here, though, the VE's testimony does not appear to have reflected all of the limitations that the ALJ found credible, because the VE addressed the number of jobs available "with the four hours standing and walking," AR at 99–100, while the RFC as assessed by the ALJ seems to have only allowed for two hours. The ALJ therefore cited the VE's testimony for a question that the VE did not answer, and did not identify any other evidence showing that a substantial number of jobs in the national economy could be performed with R.M.'s actual RFC. The ALJ's conclusion at Step 5 that R.M. could perform other work was not supported by substantial evidence, and warrants remand for

11

1 further administrative proceedings.[10]

2   Three related issues not raised by the parties' briefs might also warrant attention on
3 remand.  First, the VE only discussed merchandise marker jobs after acknowledging the standing
4 and walking restrictions in the ALJ's second hypothetical.  She did not address whether the ticket
5 taker and parking lot attendant jobs that she had initially identified in the absence of standing and
6 walking restrictions would still be available.  *See* AR at 98–99.  The ALJ's decision nevertheless
7 listed those other jobs as available to R.M. in addition to the 54,000 merchandise marker jobs.  AR
8 at 58.  Second, even if the ALJ had intended to pose a hypothetical that allowed R.M. to spend a
9 total of four hours on his feet (contrary to the ALJ's response to the attorney's question), the VE
10 only discussed merchandise marker positions where someone would "stand and walk for four
11 hours out of the day," and did not specifically discuss whether those roles would allow for no
12 more than two hours of standing and no more than two hours of walking.  AR at 98–99.  Third,
13 neither the ALJ nor the VE addressed whether the six hours of permissible sitting were cumulative
14 to the time that R.M. could spend on his feet, or if those categories also overlapped such that R.M.
15 would need to spend at least two hours per eight-hour workday neither sitting nor standing, but
16 instead reclining or in some other position.  Notably, R.M. testified that he spent at least some
17 portion of a typical day lying down because it was "hard to sit up right now."  AR at 80–81.  The
18 parties have not addressed those issues and the Court does not rely on them for its decision to
19 grant judgment in Plaintiff's favor and set aside the Commissioner's decision.  Because remand is
20 necessary at least to resolve the error discussed above regarding the cumulative amount of time
21 that R.M. could spend on his feet, however, the Commissioner is also encouraged to address these
22 issues on remand to the extent that they are relevant.

### C.   Application of the Medical-Vocational Guidelines

R.M. argues that he should be found disabled under the Medical-Vocational Guidelines,

---

[10] There is no evidence in the record that jobs would *not* be available for someone with R.M.'s RFC, and R.M. cites no authority for directing an award of benefits (rather than further administrative proceedings) under the circumstances presented.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (explaining that errors ordinarily warrant remand for further administrative proceedings rather than a judicial decision that a claimant is disabled).

12

also known as the "Grids." ECF No. 10 at 19. Those rules allow for a finding of either disability or non-disability at Step 5 based on a claimant's age, education, transferable skills, and exertional limitations, reflecting regulatory findings as to whether significant work is available for people with various combinations of those traits. *Ford v. Saul*, 950 F.3d 1141, 1149 n.4 (9th Cir. 2020).

The ALJ found that R.M. was a person "closely approaching advanced age," that he had a high school education, and that he did not have materially transferable job skills. AR at 47. R.M. does not dispute those findings. Based on those traits, Rule 201.14 of the Medical-Vocational Guidelines indicates that R.M. would be disabled if he was limited to sedentary work, and Rule 202.14 indicates that he would not be disabled if he was capable of the full range of light work. 20 C.F.R. pt.404, subpt. 9, app. 2, §§ 201.14, 202.14. The ALJ found that Rule 202.14 did not apply because R.M.'s RFC included further restrictions from the full range of light work, and that Rule 201.14 did not compel a finding of disability because the VE testified that work would be available for someone with R.M.'s RFC. AR at 58. The ALJ therefore did not rely on the Medical-Vocational Guidelines, and instead relied on the VE's testimony to conclude that R.M. was not disabled because he could perform work available in the national economy. *Id.* R.M. argues that he should be found disabled under Rule 201.14 because he is essentially restricted to sedentary work. ECF No. 10 at 19.

Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

The RFC assessed by the ALJ does not meet that definition, at the very least because the ALJ found that R.M. could lift up to fifteen pounds—i.e., more than the ten pounds provided in the definition of sedentary work. AR at 48. R.M. contends that he should nevertheless be treated as limited to sedentary work based on a provision of the POMS (an agency manual) addressing exertional capacity that falls between two rules, ECF No. 10 at 19–20, while the Commissioner

argues that the POMS calls for treating R.M. as capable of light work and thus not disabled, ECF No. 12 at 5–6. The POMS instructs ALJs to use the "higher-numbered rule and find the claimant not disabled if . . . the claimant has a *slightly* reduced capacity for the higher level of exertion," and to use the "lower-numbered rule and find the claimant disabled if . . . the claimant has a *significantly* reduced capacity for the higher level of exertion." Soc. Sec. Admin. POMS DI 25025.015(D), "Using a Rule as a Framework When Exertional Capacity Falls Between Two Rules," *available at* https://secure.ssa.gov/poms.NSF/lnx/0425025015 (accessed Aug. 26, 2024) (emphasis added).

The Court has no occasion to determine here whether R.M.'s RFC was "sightly" or "significantly" reduced from the level of light work. In a decision not addressed by either party, the Ninth Circuit has held that the "POMS constitutes an agency interpretation that does not impose judicially enforceable duties on either this court or the ALJ." *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1073 (9th Cir. 2010). Moreover, Ninth Circuit precedent allows the Commissioner to make the Step 5 determination of whether other jobs are available based on *either* the Medical-Vocational Guidelines *or* testimony from a vocational expert. *Ford*, 950 F.3d at 1149; *Tackett*, 180 F.3d at 1099; *see also Resco v. O'Malley*, No. 23-35177, 2024 WL 3177785, at *2 (9th Cir. June 26, 2024) ("[T]he ALJ did not err in declining to find Resco disabled pursuant to Medical Vocational Rule 201.14. The ALJ relied on the testimony of the VE to determine that Resco can perform a significant number of jobs in the national economy."). Although the ALJ erred as discussed above in relying on vocational expert testimony that did not account for all relevant restrictions, the ALJ had no judicially enforceable duty to apply the Medical-Vocational Guidelines, at least where R.M.'s RFC fell somewhere between the levels of light work and sedentary work. On remand, the ALJ may use either the Medical-Vocational Guidelines (as informed by the POMS) or appropriate testimony from a vocational expert to determine whether jobs are available for R.M. in light of his RFC.

### D.     Grip Strength and Difficulty Grasping

R.M. contends that the ALJ failed to account sufficiently for his testimony regarding pain in his hands and difficulty grasping objects, as well as medical records showing reduced grip

14

1   strength. ECF No. 10 at 20–21. The Commissioner contends that the ALJ did not need to account
2   for R.M.'s testimony because he found that testimony less than fully credible. ECF No. 12 at 6.
3   Although R.M. does not specifically address the ALJ's credibility finding, the ALJ does not
4   appear to have met the Ninth Circuit's standard for rejecting such testimony, which "require[s] the
5   ALJ to specifically identify the testimony from a claimant she or he finds not to be credible and
6   explain what evidence undermines the testimony." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775
7   F.3d 1090, 1102 (9th Cir. 2014) (cleaned up); *cf.* AR at 53 ("[T]he claimant's statements
8   concerning the intensity, persistence and limiting effects of these symptoms are not entirely
9   consistent with the medical evidence and other evidence in the record as a whole for the reasons
10  explained in this decision.").

11  R.M. relies on a medical journal article from outside the record to assert that the grip
12  strength values in his medical records are well below average, without addressing whether it
13  would be appropriate for this Court to consider such material. *Id.*[11] The Commissioner does not
14  specifically address the journal article or the medical records regarding grip strength, and instead
15  argues that R.M. failed to identify any medical opinion that he had particular limitations in
16  grasping. ECF No. 12 at 6.

17  The Court need not resolve these issues. Assuming for the sake of argument that the
18  medical journal is subject to judicial notice, that R.M.'s grip strength was below average, and that
19  the ALJ did not provide sufficient explanation to discredit R.M.'s testimony regarding his hand
20  pain and grasping ability, R.M. has not argued or shown that any such error would require finding
21  him disabled, as opposed to remand for further administrative proceedings. The Ninth Circuit's

---

[11] R.M. cites a 1985 medical journal article as demonstrating normal grip strength for men of his age and older. ECF No. 10 at 20–21. The URL that R.M. provides for the article (www.fcesoftware.com/images/5_Grip_and_Pinch_Norms.pdf) is not functional, and appears to have been copied without citation from a 2014 opinion by the Seventh Circuit, which also does not explain why it is appropriate for a court to consider that source. *See Herrmann v. Colvin*, 772 F.3d 1110, 1112 (7th Cir. 2014) (Posner, J.). Although R.M.'s citation to the medical journal article states that the URL was "last visited October 2, 2023"—the day that R.M. filed his Motion—the Internet Archive's records of that URL suggest that it has been non-functional since July 7, 2022 at the latest. Internet Archive, https://web.archive.org/web/20220707181806/www.fcesoftware.com/images/5_Grip_and_Pinch_Norms.pdf ("Page Not Found" error archived on July 7, 2022, accessed on Aug. 26, 2024).

15

"credit-as-true" rule, which is an exception to the "ordinary remand rule" of further administrative proceedings, applies only where "the record has fully been developed" and crediting a claimant's testimony would "leave[] not the slightest uncertainty as to the outcome of the proceedings." *See Treichler*, 775 F.3d at 1100–01. That is not the case here. Any material error in the ALJ's treatment of R.M.'s grasping ability would therefore require remand for further proceedings, not a judicial determination that R.M. is disabled.

Since remand is necessary as discussed above to correct the ALJ's erroneous reliance on non-responsive vocational expert testimony, the Court does not decide whether these issues would separately require reversal, but encourages the Commissioner to consider them on remand to the extent that they are relevant to the Commissioner's determination.

## IV.  CONCLUSION

The ALJ erred in relying on vocational expert testimony that did not address all of R.M.'s restrictions as assessed in his RFC. R.M.'s Motion is therefore GRANTED except for his request that the Court award benefits, the Commissioner's Cross-Motion is DENIED, and the matter is REMANDED for further administrative proceedings consistent with this Order. The Clerk shall enter judgment in favor of R.M.

**IT IS SO ORDERED.**

Dated: August 26, 2024

LISA J. CISNEROS
United States Magistrate Judge

16